THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
CIVIL CASE NO. 2:10cv013

| | |
|---|---|
| EARLY CLIFTON MCCALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 13] and the Defendant's Motion for Summary Judgment [Doc. 16].

**I.    PROCEDURAL HISTORY**

The Plaintiff Early Clifton McCall filed an application for a period of disability and Disability Insurance Benefits and Supplemental Security Income on April 24, 2007, alleging that he had become disabled as of December 31, 2002, due to back pain, degenerative disc disease, chronic obstructive pulmonary disease (COPD), anxiety and depression. [Transcript ("T.") 116]. The Plaintiff's application was denied initially and on reconsideration. [T. 84-86, 79-83]. A hearing was held before Administrative Law Judge ("ALJ")

Gregory M. Wilson on June 18, 2009. [T. 27-62]. On September 24, 2009, the ALJ issued a partially unfavorable decision, denying the Plaintiff benefits from his alleged date of onset until June 1, 2009. [T. 12-26]. The Appeals Council accepted additional evidence, but denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-4]. The Plaintiff has exhausted his available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than

creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment

3

is shown and the claimant is not disabled. Id. Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's RFC, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id.

## IV. FACTUAL BACKGROUND

Plaintiff was 52 years old at the time of the ALJ hearing. He has a ninth grade education and no GED, and his past relevant work was as a ground maintenance worker, heavy equipment operator, logger, cable puller, and odd job worker. [T. 24, 32-33, 163]. He last worked for a logging company but quit due to back pain. [T. 34].

Plaintiff was treated for spine problems and pain at Westcare Health System from 2002 to 2008 [T. 235-78, 382-409]; at Sylva Medical Center between 2002 and 2007 [T. 279-99, 309-18, 363-73]; and by Dr. Timothy

4

Johnson of Tuckasegee Family Practice from October 2008 to June 2009 [T. 499-514]. Plaintiff was referred to Sylva Orthopaedic Associates [T. 308] and Mountain Neurological Center [T. 374-381] in 2007, and to West Care Center for Pain Relief in 2008 [T. 422-454]. He was diagnosed with COPD in January 2006, and was subsequently treated therefor. [T. 238]. He had a successful surgery for hernia repair in 2002. [T. 259-60]. He was seen in the emergency room with back pain on June 27, 2002 [T. 273], October 25, 2004 [T. 263], and October 21, 2007 [T. 465]. He underwent physical therapy for pain in his low back and left leg from a herniated nucleus pulposus in June 2007, and again starting in October 2007. [T. 384, 387, 466]. Dr. Sherman of Mountain Neurological & Spine Center characterized Plaintiff's L5-S1 degenerative disc disease as fairly severe on December 18, 2007, but indicated that Plaintiff's heavy smoking and his improvement with physical therapy made his condition, as it stood then, not one appropriate for surgery. [T. 381].

The Plaintiff underwent a lumbar epidural steroid injection on April 9, 2008. He was diagnosed with lumbar radiculopathy and facet arthralgias based on an MRI, but was not considered a candidate for surgery. [T. 430, 436, 441]. An MRI of the cervical spine on October 29, 2008 to diagnose pain radiating into both arms showed multifocal disc disease including central disc bulge impinging upon the thecal sac at C3-4. [T. 459]. In early 2009, the first

5

mention of Plaintiff's using a cane appears in the medical records. [T. 207]. The cane was not mentioned in the next few appointments' notes, but on June 6, 2009, Dr. Johnston indicated, "[r]egarding his back pain he continues to require the use of a cane to ambulate and he is unable to bend or stoop without great difficulty." [T. 501]. Plaintiff regularly complained of pain and limitations on range of motion throughout this period, and reported using various pain medication as well as a TENS unit to address his pain. [T. 230].

An MRI of Plaintiff's brain revealed a three-centimeter arteriovenous malformation on May 7, 2009. [T. 484-87].

Amy Rehfield, D.O. performed an internal medicine evaluation for Disability Determination Services (DDS) on October 8, 2007. [T. 320-6]. As to his COPD diagnosis, he denied orthopnea, tuberculosis, hemoptysis, hospitalizations or Prednisone use. His COPD was characterized as mild. A 2006 pulmonary function study showed mild restrictive ventilatory defect. It was noted that Plaintiff walked with a normal gait and did not require an assistive device. She noted that he appeared comfortable while seated. His cervical exam revealed only minor findings, and his lumbar exam showed paravertebral muscle tenderness, his Lasegue's test caused pain (positive straight leg raising), and he had some limited range of motion. Bilateral radiculopathy was noted. [T. 323]. Dr. Rehfield assessed Plaintiff as being

6

"at least moderately impaired" in bending, stooping, squatting, lifting, pushing or pulling heavy objects and walking long distances. [T. 324].

A Physical Residual Functional Capacity (RFC) assessment was performed by Sankar Kumar, M.D. on March 14, 2008. Dr. Kumar considered Plaintiff's complaints of pain in finding that Plaintiff could perform medium work, with certain postural and environmental limitations. [T. 414-21].

A Psychiatric Review Technique (PRT) was performed on November 29, 2007 for DDS by Sharon J. Skoll, Ph.D. [T. 341-54]. Dr. Skoll concluded that the evidence of record did not indicate a medically determinable mental impairment prior to August 2007. She followed this evaluation with a Mental RFC assessment in which she opined that Plaintiff could understand, remember and carry out very short and simple instructions, had moderately impaired stress tolerance, and had some occasional difficulty with the general public. [T. 337-39]. Anthony G. Carroway, MD, conducted a Mental Status Examination of the Plaintiff for DDS on November 18, 2007. His diagnosis and assessment was as follows.

> Anxiety Disorder, due to COPD/ emphysema with panic type symptoms. Mood disorder due to chronic medical illness and chronic pain with depressive symptoms. . . . He had no impairment of short term memory, mild impairment of immediate memory, and mild impairment of attention and concentration. His ability to understand, retain and perform instructions is minimally to mildly impaired. His ability to perform simple repetitive tasks and to persist at those tasks primarily would be limited by his

7

objective physical findings and his somatic complaints including pain.

[T.335].

Plaintiff received mental health treatment via three visits to a therapist beginning on May 29, 2009. [T. 493-498]. These appointments were scheduled at the request of his family doctor due to suicidal comments that Plaintiff dubiously made and then recanted during an office visit. [T. 504]. He was initially diagnosed with major depression single episode, due to reports of depression triggered by his disability. [T. 498]. At the next appointment, he indicated that Lexapro and relaxation exercises had helped alleviate his symptoms. By the third and last appointment, he said he no longer felt depressed. [T. 493]. On June 6, 2009, he told his family doctor that his anxiety was controlled and that therapy was helping a great deal. [T. 501].

At the ALJ hearing, Plaintiff testified that he experienced pain in his lower back, upper back and neck. [T. 35]. He reported having undergone a total of seven epidural injections for pain. [T. 37]. He testified that he could not bend or stoop. [T. 38]. Plaintiff testified that his neck problems made his hands numb, so gripping was difficult. He reported that sitting still was painful and that he was limited to sitting for 15 to 20 minutes at a time. [T. 39-40]. He reported that medications make him sleepy. [T. 42].

With respect to activities of daily living, Plaintiff testified that he cannot do any yard work or any household chores other than light trash removal. [T. 43, 49]. He stated that he needs assistance with getting out of the tub and bed. [T. 44]. He reported driving two to three times per week. [T. 50]. He stated that he has no social outlets other than accompanying his landlord to farming tasks. [T. 51].

Plaintiff's wife testified that he fishes every two weeks for approximately thirty minutes at a time. She confirmed that he needed assistance getting out of the tub and the bed due to pain. [T. 53]. She reported that he spends most of his day in a recliner, and that he barely sleeps at night. [T. 54]. She further reported that he cannot lift anything. [T. 55].

## V. THE ALJ'S DECISION

On September 24, 2009, the ALJ issued a partially unfavorable decision. [T. 12-26]. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured was December 31, 2007 and that he had periodically engaged in substantial gainful activity since August 12, 2006, the alleged onset date. [T. 14]. The ALJ then determined that multi-level degenerative disc disease of the lumbar and cervical spines and chronic obstructive pulmonary disease were severe impairments. [Id.]. Plaintiff's arteriovenous (AV) malformation, carpal tunnel syndrome, depression and

9

anxiety were found to be non-severe. [T. 17]. The ALJ concluded that the Plaintiff's impairments did not meet or equal a listing. [Id.]. He then determined that prior to June 1, 2009, Plaintiff retained the residual functional capacity to perform medium work, limited to occasional balancing, stooping, crouching, climbing of ladders, ropes and scaffolds; frequent kneeling, crawling, and climbing ramps and stairs. He was further limited to avoiding concentrated exposure to fumes, especially those in a steel mill, and hazards. [T. 19]. The ALJ next determined that on and after June 1, 2009, Plaintiff had the same residual functional capacity as before but with the additional limitation to ambulating with a cane. [T. 23]. The ALJ further found that since August 12, 2006, Plaintiff had been unable to perform any past relevant work. [T. 24]. The ALJ determined that Plaintiff was a person closely approaching advanced age, with a limited education. At step five, the ALJ concluded that prior to June 1, 2009 significant work existed in the national economy that Plaintiff could perform, but that after date, there were no jobs in significant numbers that Plaintiff was capable of performing. [T. 24-25]. Accordingly, the ALJ concluded that the Plaintiff was not disabled prior to June 1, 2009, and that he became disabled after his date last insured, thereby disqualifying him for Title II benefits. [T. 26].

## VI. DISCUSSION

On appeal, Plaintiff argues that the ALJ erred in evaluating Plaintiff's residual functional capacity (RFC), and that the ALJ erred in weighing the opinions of Plaintiff's treating and examining doctors.

### A. The ALJ properly evaluated Plaintiff's residual functional capacity and his findings are supported by substantial evidence.

In arguing that the ALJ erred in evaluating his RFC, Plaintiff states in conclusory fashion that the ALJ gave "impermissible weight" to the physical RFC assessment of Dr. Kumar, over that of Dr. Rehfield. [Doc. 14 at 16]. Plaintiff does not cite any authority or present any significant analysis of this issue. The Court finds no error in this regard. The ALJ relied on Dr. Kumar's RFC assessment as being most consistent with the record as a whole through June 1, 2009. While Plaintiff argues that the ALJ should have adopted the findings stated in Dr. Rehfield's examination, it is noted that Dr. Kumar's assessment encompassed a longer period of records and as such, is more reflective of the longitudinal record than Dr. Rehfield's evaluation. Substantial evidence therefore supports the ALJ's decision to attribute weight to Dr. Kumar's opinion.

Next, Plaintiff contends that the ALJ impermissibly relied on isolated findings and failed to mention the numerous objective findings in the medical record which would support greater limitations than those included in his RFC.

11

This argument, too, is without merit. In evaluating a claimant's RFC, the ALJ must consider the entire record and "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p at *7. The ALJ's RFC assessment was more than sufficient to comply with these requirements. The ALJ made a detailed discussion and analysis of the medical evidence, including that evidence which appears to be favorable to Plaintiff's claim. [T. 15-17, 20-22]. The ALJ fulfilled his duty to review the entire record and to identify the evidence he found to be significant to his decision. In so doing, he did not have an obligation to discuss every page of evidence in the record. See Parks v. Sullivan, 766 F.Supp. 627, 635 (N.D. Ill. 1991).

Reviewing the record as a whole, the Court is satisfied that there is substantial evidence to support the ALJ's determination that Plaintiff had the residual functional capacity to perform a limited range of medium work. Plaintiff's first assignment of error is, therefore, overruled.

**B.** **The ALJ followed applicable law in evaluating Plaintiff's mental impairments, and his findings are supported by substantial evidence.**

Plaintiff next asserts that the ALJ erred in concluding that Plaintiff's anxiety and depression were not severe mental impairments. Specifically, he

12

argues that the ALJ erred in rejecting the opinion evidence offered by Dr. Carraway and the State agency doctors, and that the ALJ impermissibly substituted his own opinions over these accepted source medical opinions.

"When a claimant alleges disability due to a mental condition, the Commissioner must follow a special technique set forth in 20 C.F.R. § 404.1520a and the Listing of Impairment[s]." Waters v. Astrue, 495 F.Supp.2d 512, 515 (D. Md. 2007) (emphasis in original). First, the ALJ is to evaluate the symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. §404.1520a(b). As a means of determining the impairments' severity, the ALJ is then required by SSR 96-8p to undertake a step-two evaluation of mental impairments consisting of a review of claimant's limitations under the criteria set out in "paragraph B" and "paragraph C" of Listing 12.00.

The ALJ's articulation of his application of the special technique was fully adequate. With severity being in question at both steps two and three, he indicated at the end of his step two discussion that severity would be evaluated within his step three discussion. [T. 17]. He went on to discuss the issue of severity thoroughly, eventually concluding that no severe mental impairment was in evidence. [Id.]. There is substantial evidence to support the ALJ's finding in that regard. As the ALJ noted, Plaintiff gave extensive and

detailed hearing testimony [T. 32-51]; filled out his own function report, in which he listed reading and woodworking as hobbies [T. 150]; and passed a memory test and correctly recited the number of states in the United States and the capital of North Carolina in a consultative examination [T. 334-35], all of which were inconsistent with his allegations of confusion and poor concentration. Plaintiff stated that he needed no reminders for personal care or taking medication [T. 148], and a neurosurgeon noted that Plaintiff had no problems with recent or remote history [T. 380], thus undermining Plaintiff's allegations of memory limitations [T. 22]. Furthermore, despite alleging disability since 2006, Plaintiff never sought specialized mental health care until May 2009, apparently in anticipation of his hearing with the ALJ the following month [T. 494], a fact which undermines Plaintiff's allegations of disabling nervousness and depression.

Contrary to Plaintiff's argument, the ALJ properly evaluated the opinions of Dr. Carraway and Dr. Skoll, the state agency physician. While Plaintiff claims that the ALJ's rejection of Dr. Carraway's and Dr. Skoll's opinions was unsupported by the evidence, the ALJ clearly supported his rejection of these opinions by referring to the evidence in great detail [T. 22-23], ultimately concluding that these opinions were not consistent with the record as a whole. See 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4) ("Generally, the more

consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

The Court concludes that the ALJ adequately supported his decision not to adopt Dr. Carraway's or Dr. Skoll's opinions, and that substantial evidence supported the ALJ's determination regarding Plaintiff's mental impairments.

## VII. CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards, and that there is substantial evidence to support the ALJ's finding that the Plaintiff was not disabled from the alleged date of onset through June 1, 2009.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 16] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 13] is **DENIED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: November 29, 2011

Martin Reidinger
United States District Judge

15

Case 2:10-cv-00013-MR   Document 17   Filed 11/29/11   Page 15 of 15